Here, argument in our third consolidated cases, United States v. Mack and Blades. Ms. Albro, when you're ready. Please the court. My name is Kimberly Albro, and I'm here on behalf of the appellant Craig Blades. Mr. Blades' position is that South Carolina assault and battery, second degree, and criminal and domestic violence, or CDB, second degree, are not crimes of violence following the Supreme Court's Borden case because only a reckless mens rea is required for conviction. South Carolina law makes it clear that this offense can be committed recklessly, and I would point first to the case law. So Ms. Albro, you've probably seen this. The South Carolina Supreme Court has accepted certification on literally this question, so ultimately they're going to give us an answer. Can I ask you about something different then? Let's assume that they're going to say, yes, it is. Because if they say no, it's great for you. Well, there's a second question. Even if they say no, why isn't there a pretty strong harmless error argument in this case? I mean, here we have a district court saying on the record, even if I'm wrong about how to classify this offense, I would still give him this sentence. So let's assume for the sake of argument that the South Carolina Supreme Court adopts the interpretation of the statute that favors your client. Why doesn't he lose under harmless error? Well, I have a few reasons to point to, and I would agree with you. That is on the record, but you may have noticed in the joint appendix that the court came back two different times after that first sentencing to clarify issues. So at the first sentencing, there was an issue about the judge repeatedly referring to 120 months being the low end of the guideline range. And counsel objected, saying you don't understand that 120 months is the guideline range. And I guess upon reflection, that same afternoon, the court went back into session, and the sentence was clarified, and the court referenced Mr. Lades' adverse childhood experiences and said she had considered those, she had sympathy for him. And then she said that she would still impose 120 months, that she understood that 120 to 150 months was the guideline range capped by the statutory maximum. But at that time, she did not again say she would impose the same sentence. So I think because of the confusion at the first hearing and the need for two follow-up clarification hearings, that there isn't the kind of certainty that savinamitute would require to satisfy the first prong of harmless error. And second of all, under the second prong of savinamitute, even though you would not get to that if you find that it's not certain that the court would impose the same sentence, there's a difference of 28 months. I think that's pretty significant under Rosales Morales and some of the other Supreme Court rulings that that's a significant enough that it may not be a reasonable sentence, So to just summarize, the first order argument is that we can't really be sure the court meant that because there was confusion. I mean, did anyone ask, did you ask the court to, I don't know if it was, did you, in the sense of your client, ask the court to clarify that? The questions at the first sentencing hearing, the original one, was that, hey, this isn't, it's not, that's not the minimum range. That's not the minimum range. So I think because of what was brought up there, it wasn't totally clarified then, even though Mr. Beledes did ask for some clarification or wanted assurances that the court understood that the guideline range was not 120 to 150 months because it was capped by the statutory maximum of 120 months. So that was the guideline range. But is there any indication, I understand the district court came back later and had to clear up the record about its apprehension about what the guidelines range had been. The court misspoke and commendably, when pointed out that was a mistake, it cleared up the record. Did the court, but I guess I didn't read the transcript as indicating anything about the court say walking back its previous statement. No matter how this is classified, he's getting 120 months. I didn't see anything in the transcript of the second hearing that suggests the court was walking that statement back at all. No, I would agree that the court did not walk back that statement, but it also didn't reaffirm that statement. And it made a statement, I believe it was at the second, that afternoon hearing, the second hearing, where it said, well, he's gotten the benefit of the guideline range being capped at the statutory maximum. And I think that the fact that it seemed the court was still considering the 120 to the 150 months as the guideline range in that respect. That it is not clear that if the guideline range was 92 to 115 months, the court might reconsider that. Particularly because of the emphasis in the first hearing about I'm giving him the low end of the guideline range. There's no indication that she would not consider the low end of the guideline range if it became 92 to 115 months. And since we do have the certified question, if there aren't any questions about the mens rea issue, the harmless error was the only other issue that I was prepared to address unless the court has questions. All right. No, thank you. We'll hear. Thank you. We'll hear from Mr. Anderson. Good morning, your honors. Howard Anderson appointed on behalf of Mr. Mac. As your honor said, I know the case is consolidated and my clients had a bit of a weird position in that. We've got the certified question in Clemens that would be highly relevant to this court's decision. But my guy is going to get out in March. Can you walk me through that? I tried to figure out why your guy's going to get out in March. And I'm just curious. I was not based on the sentence that it was imposed. I was surprised to learn that you that you're at least your view is that your guy's going to get out in March. Well, that's what the website says. Right. OK. Obviously, I'm not going to say that he should serve longer. I think part of it is because it took a long time at the trial court that there were an objection was made. And then the court recessed to have the ruling. It could also be because of the first step back to earn time credits, possibly. I just don't know. But he's just in a weird spot. Ideally, I would like to know what the Supreme Court says. But if we wait that long, it's going to mean that he. Sure. So let's let's talk about then why this is different than Blades, which is to say your client was convicted of a crime that contains the words offers or attempts. That sounds like mens rea to me and it sounds like mens rea above reckless. I don't know why recklessly offer or recklessly attempt to do something. Well, first, as I know, I don't necessarily agree that that an offer is a threat and to be a crime of violence. An offer has to be a threat. Sure. No separate question about whether it's a threat. But I guess would you agree with my intuition that it's hard to imagine that I can recklessly offer or attempt to do something? No, judge, I don't think that I would. Well, first, you have to offer or attempt an injury. And I don't agree. No, I get before we get to injury. There's just the first order of question of what because, you know, these these cases have told us one thing we have to look at is what is the mens rea? And the court has said recklessness is not enough. Knowledge and purpose is enough. And there maybe there's this extreme recklessness. Greyer, I guess. Can I recklessly offer or attempt to do something? I know I know we're bracketing the something and I promise we'll get to the something. But before we get to the something, is it possible to recklessly offer or attempt to do something? Well, I mean, if we go to one of the hypothetical, I guess the examples I give my brief back during the covid craziness. Right. Where you're coughing while everyone isn't sure exactly sort of what's going on. You know, you're not necessarily intentionally trying to give someone covid. You know, you may not even know that other people are around, but you're not wearing your mask like you're supposed to. Again, that might be sort of a negligence. Yeah, that might be a terrible thing to do. It might be a reckless thing to do. But I don't see how that's in it. I don't to me, I don't see if I don't see how coughing on someone when I should be wearing a mask is an attempt to injure them. It might be negligent. It might be reckless, but it doesn't strike me as an attempt. And it's certainly not an offer. I don't even know. And that covid hypothetical, I don't even know what an offer is. I guess I offer to sneeze on someone when I have covid. But but I don't see how that's still reckless. I mean, I'm saying. I would agree that you cannot negligently or recklessly attempt something because an attempt is a specific intent crime. How can I recklessly offer something? And so, again, this is sort of what exactly is and is an offer. I mean, one. If an offer is not just a threat, but merely a proposal to do something right, you might. In South Carolina, conspiracy has got to have two people. It's got a much lower penalty than under federal law. But I imagine, for example, if there were someone in the other room that we were planning that you and I were talking about killing, I didn't know the microphone was on. Right. A judge, would you like for me to kill him? Right. I'm willing to kill him if you want me to. Right. That's an offer or I'm willing to shoot him in the leg. The phone is on. I don't know that it's on. Right. But he hears it. It is a means that is sort of I'm proposing to shoot you in the leg. Right. So I am negligently scaring him over there because the assault is about the fear that the person, the victim has, the battery is about the actual touching. And so I would say that in that admittedly strained hypothetical that you might be able to get there. So let's talk about the something then and your argument why this doesn't require the type of force necessary to satisfy. Yes. And so, again, it has to be an injury. So the first part is you have to offer attempt to injure. It's not necessarily you have to offer or attempt serious injury. Right. And I think that the injury there, as you saw from all those news articles, that we that we literally were prosecuting people for coughing on people. Well, though, we saw that Iowa prosecuted one person for coughing on a person under a statute that is not the South Carolina law. And then I see a footnote in your reply brief about someone charged with third degree A and B, whereas your client was charged with first degree. But all all of the A and B's require an injury. And so that is a common term, whether it's first, second, third. And so it's the same if it's the same injury for third, it's the same injury for one. And so then we also look at and then was there serious bodily harm that resulted? Yes or no. But again, if if a coughing injury suffices for third, it would satisfy that. Doesn't first degree assault and battery are quite great bodily harm. I it requires an offer or attempt to injure a person. And then the act is accomplished by means likely to produce death or great bodily injury. Sure. OK, so maybe maybe COVID is an injury. But what's your evidence that coughing on someone is likely to cause death or great bodily harm as construed by South Carolina courts? Well, again, judge, I'm sure I am. I am pausing the hypothetical about how we get sort of coughing goes from a third to a first. And so if if we have a communicable, highly communicable disease or whether it's spitting on someone or coughing on someone, and if the disease is particularly fatal, then I could see a solicitor very well charging that if the injury actually results. So, again, part of it is obviously a difficult as a proof about proving that my cough led to you getting this disease or not. But but do I think the solicitor might charge it? It wouldn't surprise me. And as I said, there have been a couple of cases involving relatively minor injuries that were actually being prosecuted. The only other I see that my time here is almost up. The only other bit that I would point out here is that just on the on the degree to which the judge explains his sentence, the government's opposition was predicated upon it being plain air. If if in fact, as the record shows, that a trial counsel asked for a lower sentence, they don't contest. In the brief, they did not contest it. And so I would just point that out. And with that, your honors, I will serve the remainder of my time. Thank you. Thank you. All right. Mr. Shumite. Yes, your honor. May it please the court. I'm assisting U.S. Attorney Derek Shumite and your honor for logistical purposes. On behalf of the government, I will be arguing assault and battery first and second degree being crimes of violence. And the remainder of Mr. Mack's case, my associate will be arguing remainder. So, your honor, as an initial matter, we believe the district courts in both cases correctly determined assault and battery first degree and second degree were crimes of violence. I understand from your questions, we have a certified question on assault and battery second degree. I would briefly like to touch on some of the points raised as to assault and battery first degree. In this case, we are limited to a specific subsection. So can we decide this case without South Carolina weighing in on assault and battery second degree? I think you can, your honor. I think if the court came in and said it was a mens rea of an intentional act, I think it helps us greatly. But I think you can decide it without that. Because even if they were to decide reckless, what's unique, as Judge Hyten pointed out, is here we're dealing with a statute or the provision of a statute that specifically deals with offers or attempts to injure. There's been some discussion about offering. I think if we look to the Drummond case, we see that they say that an offer is at least a threat, not synonymous with a threat. And so I think the way to contextualize it is if I tell my daughter if she doesn't do something, she's going to get her phone taken away. That's a threat. If she doesn't do the thing and I say, now I'm taking your phone, I've elevated it to an offer. And in that example, an offer still requires. How is that an offer? That's carrying out a threat. I think it's not carried out yet. You're in that weird gray area between when the threat occurs and when you've done the act. And the case law shows that when you talk about an offer, it is a declaration of present intent to do harm. And I think that's what makes an offer an intentional act. I would call it a threat plus. It's a threat not in the future. It's a moment. It's saying in the moment, I'm going to do this now. And, Your Honor, I think, again, the Drummond case, I do think answers this fairly squarely where it dealt with the word offer to say that it is at least a threat. And so, Your Honor, I do believe this is an intentional, these are intentional acts. Has the government come across cases that were actually prosecuted as offers? I'm just trying to envision what this crime even looks like. Your Honor, I have not found any cases, not to say that they are not out there. I do think in State v. McGowan, the court talks about an attempt. But when it talks about the crime in sort of a 10,000-foot view, it conflates the offer and attempt. I think in many instances, attempts will always have an offer. And I think that most cases that you find have risen past just the offer. So I think the reason you may not find cases is because those things being prosecuted are being prosecuted as attempts, which inherently encompasses an offer. The McGowan case is an example. That person knew these people were inside, chose to get the gun, shot the gun. I think his act of getting the gun, being prepared to shoot maybe the offer, once he fires the gun, it becomes the attempt. But in that case, and the critical issue in that case, as the court said, that person still had to have a specific intent to harm the people inside. And, Your Honor, that intent, of course, is applied to the force. And the force in this case, as Your Honor has pointed out, is great bodily injury. And when we look at the statutory definition of that, we're talking about a substantial quantum of force, far more than the Chris Johnson standard of causing some type of physical pain. So, Your Honor, as to assault and battery first degree, I do believe that the case law in point indicates that you have a mens rea of greater than recklessness. And that mens rea of greater than recklessness is applied to that quantum of force, which is great bodily injury. And, Your Honor, the next point in our brief that is raised by Mr. Mack is whether or not the district court erred in opposing the sentence. Your Honor, we argue plain error given the waiver. I understand there was a discussion about a lower sentence. But either way, Your Honor, even under the more deferential or less deferential abuse of discretion standard, we think the court plainly justified its sentence. You had a case here that involved a fully contested hearing. Mr. Mack took the stand. His victim took the stand. I believe some people who were at the club that night took the stand. The court had a day-long hearing, had briefing, and then came back for a second hearing on a second day. An extremely rare occurrence in a supervised release case. And so, Your Honor, not only do you have the court's statements, which the court specifically says in the statement that it considered the history and characteristics, employment and family strain, and policy statements. And that is merited out by the fact that the court heard information from all that. So, Your Honor, we do believe that Mr. Mack's sentence was reasonable and that the district court did not procedurally err. And, Your Honor, our last argument is that even if the court did err, that error would be harmless. I do understand and fully acknowledge that the government, in its brief, asked the court to declare the sentence would be imposed regardless. The court did not do that. It was silent on that fact. But the court did specifically talk about knowing the difference between grade A and B and then saying, nonetheless, this is extremely serious conduct. Mr. Mack was someone who nearly beat a man to death and didn't lie on the stand about it, as the court noted. That's certainly an argument that the court could have imposed the sentence either way. I mean, I just think this court has made pretty clear that we'll take it very seriously if a district court says I would impose the same sentence. I guess the district court not saying it would do it doesn't prove that it wouldn't. But I guess it seems hard to not take into account the fact that the government specifically asked the district court to say I would give him the same sentence anyway. And this district court did not say that. It is admittedly a more different argument than the Blades where the court expressly said it. I do not contest that, Your Honor. But the court also did not expressly reject it. Sure. So maybe it would. Maybe. I guess that leads me to the conclusion. Maybe the judge would have. Maybe the judge wouldn't have. And I fully concede it's a tougher issue, Your Honor. We do believe the record in total supports that the judge said that was an appropriate sentence regardless of the grade. I do take your point. I do not disagree. Your Honor, if there are no more questions, that's all I have on this issue. All right. Thank you. We'll hear from Ms. Stone. May it please the Court. Katie Stoughton on behalf of the United States. Mr. Blades' sentence was both procedurally and substantively reasonable, and it should be affirmed. I'm happy to address the merits of the CDB issue on the merits. But given the certification issue, and as we've argued in our brief, regardless of whether either or both of Mr. Blades' predicates were properly classified as crimes of violence, any error in calculating the guideline range was clearly harmless under this court's assumed error harmlessness standard. Just one clarification before we get to harmless error. So the government agrees he needs both of these predicates, right? If he knocks out either predicate, he's not a career offender, is that right? No, it's actually not a career offender issue. Sorry, but for purposes of the relevant enhancement, he only needs to knock out one of these two? If he knocks out one of the two, his guidelines would become driven by the attempted murder cross-reference, so his guidelines would drop to 92 to 115. So the reason we don't need to address CDB is because if he wins the second degree A and B, it doesn't matter whether he wins CDB. Right. And if he wins both, it doesn't make a difference. The guidelines still would be 92 to 115 months. Got it. Okay. So thank you. So first, the court abundantly made clear that it determined 120 months was the appropriate sentence for Mr. Blade. It explicitly said repeatedly on the record that it would have varied – well, excuse me, it said once on the record that it would have varied upward to 120 months. And then it said repeatedly after that that 120 months was sufficient but not greater than necessary to achieve the purposes of sentencing. In terms of the court's comments at the second and third sentencing hearings, at JA-98, the court came back on the record and said it understood that 120 months was the statutory max, that that became the guideline range. And then at JA-99, it reiterated that based on the serious nature of the offense, the need to protect the public, the need for deterrence, and the other 35 degree A factors, any sentence below 120 months would have been insufficient. At JA-100, it again reaffirmed its commitment to a sentence of 120 months. And then at the third sentencing hearing, which was on JA-104, the district court reiterated that Mr. Blade's arguments in mitigation did not support a sentence less than the 120-month statutory max. So although the explicit assumed error harmlessness statement only came at the first hearing, the district court repeatedly emphasized after making that initial statement that it was committed to a 120-month sentence. So on the first prong of assumed error harmlessness, the court can be sufficiently confident that the district court determined 120 months would be the appropriate sentence, even if the guidelines calculations were lower. On the second prong of assumed error harmlessness, a 120-month sentence was substantively reasonable. It would be just a five-month upward variance from the high end of the guideline range of 92 to 115 months. And the district court- It would be a five-month variance upward even under the most favorable guideline range to him. Yeah, a five-month upward variance from the- From the top, right, sure. So the district court determined that 120 months was sufficient but not greater than necessary to achieve the purposes of sentencing after a thorough and individualized consideration of all of the 35 degree A factors. Mr. Blades argues in his brief that the district court based its sentence on the fact that he had only received lighter sentences in the past. And I disagree that that is what the district court based its sentence on. As I said earlier, it explicitly considered on the record the nature and circumstances of the offense, Mr. Blades' history and characteristics, of which, of course, part is his criminal history and his prior sentences. It needs to provide adequate deterrence, protect the public, and avoid unwarranted sentencing disparities and Mr. Blades' acceptance of responsibility. It came back on the record twice more and said, this is the sentence that I think is sufficient but not greater than necessary. So essentially, the only argument that Mr. Blades has made challenging the substantive reasonableness of the sentence is just a disagreement with the district court about how it should have weighed his prior sentences. The district court was required to consider and address that argument, and it did both of those things. The court was not required to accept that argument. It didn't. It explained why it didn't. And then it explained why, out of all the 3553A factors, 120 months was a sufficient sentence. So as I said, the district court's sentence, even if it erred in determining one or both of these predicates was a crime of violence, was both procedurally and substantively reasonable. And the government would request that the judgment be affirmed. The court has no further questions. I'm happy to rest on the brief. Thank you. All right, Ms. Elbrow, you have three minutes in rebuttal if you'd like to use it. Thank you, Your Honor. I don't think I need three minutes, but I would briefly say, since we focus solely on the harmless error issue. And you can remove your mask if you'd like. You don't have to. Apologies. I forgot about the mask. So I would say that at the initial sentencing hearing and the confusion that was involved there, the court did focus on the nature of the offense. But the court also focused on Mr. Blade's characteristics in that he had a very, very horrible childhood. And she said she did consider those things in choosing the low end of the guideline range. So, again, I think that the three sentencing hearings together, where there was a lot of confusion in the first hearing where the court explicitly said that it would impose the same sentence, might have been tempered after when the court came back and talked about clarification of giving him some counseling that he needed and talking about how it did not consider his arrest record, which was one of the issues of confusion at the original hearing, that it was not going to consider just his arrest record and that it understood that the guideline range was 120 months, was the statutory maximum, and was not 120 to 150 months. But, again, in the initial sentencing, it focused on his characteristics and said that he got, and in the second hearing, said he got a break from the 120 to 150 months. I just think it creates enough confusion that it's far from certain that that's the sentence the court would impose if it was faced with a 92 to 150-month guideline range and, again, could consider his adverse childhood experiences. If there are no further questions, I'll rest on the brief. All right. Thank you, Mr. Anderson. You have two minutes. Thank you. I'd just like to hone in a little bit more on this offer issue. As I point out in the brief, South Carolina says that we're supposed to give meaning to every word in the statute, if at all possible. And what I heard my colleague over here say is that an attempt, quote, inherently encompasses an offer, close quote. If that is true, then there is no need to have attempt in the statute because every attempt has an offer. And so I did not hear him discuss the statutes that I cite, like the hazing statute that has threatens and offers. And so it must mean something. And this court doesn't necessarily have to say what it means. But if the court finds that offer is any broader than a threat, it's overbroad and it's not a crime of violence. So, again, you don't have to necessarily opine, but it has to be. No, we have to find that offer doesn't require a mens rea of greater than recklessness. It doesn't matter if it means you don't win automatically if it means something broader than attempt. It has to be an attempt to use with a threatened use of force. And so if an offer is broader than an attempt to use force, it's not a crime of violence. And again, the guideline would drop. And so I just want to point that out there. And if the court has no further questions, I'll stay on the brief. All right. Thank you. Thank you. Well, this this case was well briefed and well argued by all four of you. And we appreciate it, Mr. Shoemaker and Ms. Stoughton. We also thank you for your work on behalf of the United States and Ms. Arbor. We very much appreciate the important work you do every day on behalf of indigent clients. Mr. Anderson, in particular, we want to thank you for I know your court appointed. We want to acknowledge that and thank you for your work on behalf of Mr. Mack. And I'll ask the clerk to adjourn court. So I die. God save the United States and this honorable court.
judges: Stephanie D. Thacker, Toby J. Heytens, Lydia Kay Griggsby